137 So.2d 268 (1962)
M.G. WARING, E.P. Stott, and Calvert Hamilton, Appellants,
v.
J. Hardin PETERSON, Jr., As Chairman, L. Guerry Dobbins, Walter Engle, Clyde Royster and John R. Wright, As Members of the Joint Lakeland Airport Zoning Board, and Leon Findley, Polk County Building Inspector, Appellees.
No. 2264.
District Court of Appeal of Florida. Second District.
January 31, 1962.
Rehearing Denied February 20, 1962.
*269 D.M. Martin, Plant City and H.D. Wentworth, Tampa, for appellants.
Robert L. Trohn, Lakeland, for appellees.
KANNER, Acting Chief Judge.
Plaintiffs brought suit to test the validity of a resolution known and cited as the "Drane Field Airport Zoning Ordinance" which had been enacted pursuant to authority of chapter 333, Florida Statutes, F.S.A., entitled "Airport Zoning", by the Joint Airport Zoning Board of the City of Lakeland and County of Polk. They sought to have it declared invalid, null and void, and a cloud on plaintiffs' title or to have the court render a declaratory decree defining the rights, interest, duties, and obligations of plaintiffs and defendants under the ordinance. The appeal is from the chancellor's final decree dismissing the complaint.
Prior to entry of the final decree here protested, the court on October 10, 1960, had entered a final decree in favor of plaintiffs. On October 11, 1960, after that order had been filed, the court vacated it and on October 12, 1960, entered final decree dismissing the complaint. The court recited in its vacating order that the order of October 10, 1960, was filed by mistake and that the court, exercising its inherent power, of its own motion vacated and set aside that order.
The purpose of the ordinance is to provide for the safer use of Drane Field Airport, located two miles from the city limits of Lakeland, Florida, and of the surrounding properties. The measure proposes accomplishment of this by limiting vertical development of these properties. Seven zones, graduated in vertical restrictions based upon purposes of the zones and distances from the airport, were established. These restrictions require a 30 foot height limitation in the aircraft approach zones at the end of the runways, with other height limitations varying as the distance from the runways increases. A height of 400 feet is permitted at the outer perimeter of the lands covered by the ordinance. This height gradation was designed to conform to the approximate flight patterns of aircraft in landing and taking off. In addition to the height restrictions, the ordinance prohibits manufacturing establishments which produce smoke, gases, and dust that might interfere with safe use of the airport or any operations which would occasion electrical interference with radio communication between airport and aircraft, create glare in the eyes of pilots, or cause difficulties in distinguishing between airport lights and other illumination. Finally, the ordinance prohibits erection of schools or churches in the aircraft approach zones. Special exception is made for the use of citrus grove heaters and limited phosphate mining because of present usage of land in the area. The ordinance provides for non-conforming uses, for variances from the ordinance's proscriptions as *270 they are literally stated, and for administrative appeals to the board of adjustment.
The three plaintiffs are property owners of land affected by the ordinance, and the suit was brought on behalf of themselves and "others in like situation." Grounds advanced, among others, were that the measure was invalid in that it bore no relationship to health, safety, morals, or general welfare and that the ordinance was vague, indefinite, confusing, and discriminatory. Plaintiffs also protested that the limitations prevented development of the surrounding lands for their highest and most efficient use, that the value and marketability of their property, referred to as suburban, was greatly depreciated by the ordinance, that the measure constituted the taking of private property without compensation and was adopted solely to meet requirements of the Federal Aviation Authority for obtaining of federal funds for developing the airport. Defendant board members took issue with the allegations and contentions of the plaintiffs.
A special examiner was appointed to take and report the testimony and proofs in the cause. Plaintiffs' testimony tended to show that the market value of their lands had been curtailed and that difficulty would result in any attempted determination of the effect of the zoning ordinance upon their property, because the various zones were not clearly ascertainable from the zoning map attached to it. An airport engineer, a planning expert, and a real estate appraiser, testifying for defendants, demonstrated that the standards used in the ordinance were based upon Federal Aviation Agency criteria and various airport zoning plans in use in Florida, including the National Municipal Law Officers Model Ordinance, and that the measure was necessary for public safety. Defense witnesses also testified that the boundaries of the various zones could be ascertained with reasonable accuracy from the zoning map alone and that one could determine, by use of the known legal description and map and through survey, the precise zone and location of the property. The real estate appraiser testified that the value of the properties concerned was not particularly diminished as a result of the ordinance, that they were being and had for many years been used for agricultural purposes, and that any use reasonably foreseeable was permitted under the ordinance.
We conclude that the ordinance constitutes a reasonable and proper exercise of the police power. Moreover, even if the question is "fairly debatable", the court should not substitute its judgment for that of the enacting governmental agency. Under the evidence, this issue on appeal is at least fairly debatable. See Town of Bay Harbor Islands v. Burk, Fla.App., 1959, 114 So.2d 225, and City of Miami Beach v. Lachman, Fla. 1953, 71 So.2d 148.
Most closely related to the case at bar is Harrell's Candy Kitchen v. Sarasota-Manatee Air A., Fla. 1959, 111 So.2d 439, wherein the Supreme Court, in considering the constitutionality of chapter 333, Florida Statutes, F.S.A., the airport zoning legislation, generally declared the chapter to be constitutional and held valid as against appellants' property a regulation restricting the height of buildings adjacent to an airport runway, with the vertical limits varying from 27.64 feet to 175 feet, depending on distance from the runway. A structure being erected which was designed to be 41 feet in height, although located where the maximum permissible height was 27.64 feet, was prohibited as to the excess height. The court then characterized zoning regulations duly enacted pursuant to lawful authority as being presumptively valid and stated that the extraordinary burden of both alleging and proving them to be unreasonable and without substantial relation to public health, safety, morals, or general welfare rested upon the party attacking them. This decision also commented that the courts generally will not substitute their judgment as to the reasonableness of a particular regulation when it has been *271 properly adopted pursuant to lawful authority and when such reasonableness is fairly debatable. It is to be noted that the height restriction in the ordinance considered in the Harrell case is nearly 3 feet less than that prescribed here. For an enlightening discussion of the subject of zoning airport approaches see Rhyne, Municipal Law, Section 20-22, p. 489.
Section 333.06, Florida Statutes, F.S.A., entitled "Airport zoning requirements", sets out that zoning regulations adopted under it should be reasonable and should take into account, among other things, the type of flight operations expected to be conducted at the airport, the nature of the terrain within the airport hazard area, the character of the neighborhood, and the uses to which the property to be zoned is put and adaptable.
In the instant case, the ordinance under attack was said by an expert witness to be compatible with national standards of the Federal Aviation Authority and specifically adapted to the particular properties surrounding Drane Field. The need for zoning for the purposes alleged by defendants is patent and is not altered by plaintiffs' averment that the field was operated for many years without zoning and without any planes having crashed into a structure in the line of flight.
Plaintiffs state that the nature and uses of their properties should have been considered by the zoning board in passing the ordinance affecting them. They assert existence of a trend which they say will lead to industrial development so that the prohibiting of structures beyond a given height in the airport approach zones will stunt or thwart the commercial growth of their properties. Defendants counter with the statement that the ordinance does not deprive plaintiffs of the beneficial use of their lands, that those lands are and have for many years been used for agriculture, and that as to reduction in market value, the ordinance does permit almost any use of plaintiffs' lands reasonably foreseeable.
As a general rule hardship, limitations of use, or diminution of property values alone will not render a zoning ordinance void. This is true, even though the ordinance is harsh and results in serious depreciation of the value of the property affected by it; and financial advantage or disadvantage to owners as a result of it or its enforcement is not the test of its validity. Because of the common effect on properties coming under the general plan of the zoning ordinance, reduction in values shared by most or all the owners in a locality is not enough, of itself, to render the ordinance confiscatory. On the contrary, if the limitations upon the use of the property are constitutional and applied reasonably and fairly to all, they are valid and the individual hardship and loss must be endured to the end that the greater advantage to the community as a whole is made possible. See McQuillin, Municipal Corporations, 3rd Ed., Vol. 8, Section 25.44, p. 98; Yokley, Zoning Law and Practice, Vol. 1, Section 35, p. 58.
Section 333.02 categorizes creation or establishment of an airport hazard as a public nuisance and an injury to the community served by the airport. This section continues by stating that creation or establishment of airport hazards should be prevented in the interest of public health, safety, and general welfare and that "this should be accomplished, to the extent legally possible, by the exercise of the police power, without compensation."
Plaintiffs strenuously advocate as persuasive a case from another jurisdiction, Yara Engineering Corporation v. City of Newark, 1945, 132 N.J.L. 370, 40 A.2d 559. In that case, the Supreme Court of New Jersey set aside a zoning ordinance which limited the height of buildings and use of property in the vicinity of a municipal airport as being unauthorized by statute and as constituting the taking of private property without due process or just compensation. *272 The case is distinguishable, however, in that no state legislative authority was found to exist permitting enactment of an ordinance for the zoning of land solely for the use of an airport. Florida has clearly provided such authority through chapter 333. Nor does the case of Banks v. Fayette County Board of Airport Zoning Appeals, Ky., 1958, 313 S.W.2d 416, lend strength to plaintiffs' contentions, for the court there found no fault with the portion of the ordinance similar to the one here considered but merely held the prohibition as a source of congestion of a motel in an airport hazard area to be unreasonable, discriminatory, and unenforceable, since apartment houses and hospitals were permitted.
An additional point advanced by plaintiffs is that the ordinance is void because of its asserted vagueness. The "void for vagueness" rule as laid down in Phillips Petroleum Co. v. Anderson, Fla. 1954, 74 So.2d 544, indicates that when an administrative official has discretionary authority, an intelligible principle or standard must be established as a guide to the official in performing his duties. See also Moon v. Smith, 1939, 138 Fla. 410, 189 So. 835; and North Bay Village v. Blackwell, Fla. 1956, 88 So.2d 524. Arguing that this requirement was not met as to the ordinance here because of inadequate property descriptions in it and inaccuracy of the attached map, plaintiffs claim that they are unable to ascertain the effect of the various zones upon their property through reference to these documents. As previously indicated, there is conflicting testimony as to this, and the chancellor, resolving this question in favor of defendants, determined in effect that the plaintiffs had not furnished sufficient proof to sustain their contention that the "void for vagueness" rule renders the ordinance invalid. From our study we cannot say that plaintiffs met the burden of proof imposed upon them.
Section 333.07(2) sets out in essence that persons seeking variance might apply to the board of adjustment and that such variances shall be allowed when a literal application or enforcement of the regulations would result in practical difficulty or unnecessary hardship and when the relief granted would not be contrary to public interest but would effectuate substantial justice and would be in accordance with the spirit of the regulations and chapter 333. There is a section contained in the ordinance that is patterned after the mentioned statutory section.
It is well to observe that the chancellor, dealing with plaintiffs' contention that the height limits and prohibited uses required by the ordinance prevents development of the property for its highest and most economical use and so constitutes the taking of private property without compensation, found that the present use is agricultural, that the ordinance does not now affect that usage, and there there is no general urban development in the area involved. The court then continued:
"It may be (but this Court is not now ruling) that at some later date, if there is a specific attack made by one or more of the plaintiffs or others in like situations, in respect to specific height limitations, it could be shown that the above contention may have some merit."
We are concerned in this case with a general attack upon the validity of the zoning ordinance and not a specific attack by one owner with reference to his particular property or contemplated improvement upon it as it may be affected by the measure assaulted. In zoning cases, each issue created must be decided as and when it arises, and the validity of a rule or regulation must depend upon the facts in each particular case. Harrell's Candy Kitchen v. Sarasota-Manatee Air A., supra.
Concerning plaintiffs' protest with respect to the chancellor's entry of the vacating order here involved subsequent to the filing of the initial decree, we hold that vacation by the chancellor on his own motion *273 of the first decree because of mistake did not constitute error.
Although plaintiffs here are also seeking a declaratory decree, there is not adequate evidence upon which to afford such relief. The other points raised by plaintiffs on this appeal have been considered, but our view is that they will not support reversal. Plaintiffs have not met the extraordinary burden with which they were charged, especially in view of the "fairly debatable" doctrine. The decree of the chancellor is affirmed.
Affirmed.
SMITH and WHITE, JJ., concur.