239 So.2d 515 (1970)
CITY of CLEARWATER, a Municipal Corporation, Appellant,
v.
COLLEGE PROPERTIES, INC., Jerry Janelli, John Araujo and Betty Araujo, His Wife, T.R. Sargent, Mike Cappagli and Victor Lindstrom, Appellees.
No. 69-568.
District Court of Appeal of Florida, Second District.
September 25, 1970.
Herbert M. Brown, City Atty., and N.S. Gould, Asst. City Atty., Clearwater, for appellant.
*516 George A. Routh, Carleton L. Weidemeyer, Wightman, Rowe & Weidemeyer, Clearwater, for appellees.
PIERCE, Judge.
The City of Clearwater appeals from an order of the Pinellas County Circuit Court quashing the action taken by the City denying appellees' application for change of zoning, enjoining the City from enforcing its zoning regulations as applied to appellees' property which limits the use of the property to "Professional and Related Services" (PRS), and ordering the City to change the zoning on appellees' property to a zone classification no less restrictive than "Business, B". The trial Court found that the evidence clearly established that the zoning regulation in question as applied to appellees' property is unlawful, unreasonable and capricious; that the PRS restriction imposed on said property bears no relationship to the public health, safety, morals or welfare and that the action of the City in denying appellees' application for zoning change to Business (or B) was contrary to law and amounted to confiscation.
The evidence adduced below shows that the properties involved are ten contiguous lots in one block, now zoned PRS, fronting on Drew Street, a four-lane main artery in the City of Clearwater. Except for two lots to the east of the subject property on the corner of Drew and Cincinnati Parkway (on which there is a doctor's office facing Cincinnati Parkway, and a parkway strip which does not have enough depth to be used for any purpose) all the lots along Drew Street in the area are zoned B.
The subject area was formerly zoned R-4, multiple family, and after several attempts to have it zoned B, it was finally zoned PRS in 1964. The properties in the vicinity along Drew Street zoned B consist of entirely developed thriving businesses, except two vacant lots adjacent to Skycrest Market some distance from the subject property. Although the subject property had been zoned PRS approximately five years prior to appellees' application for rezoning to B, it remained undeveloped.
One of the appellees testified that his property was unmarketable as zoned and that its only use was for business purposes. Appellees' expert witness Beach testified that the front foot value of the lots in question would be $100 to $200 in their present zoning, and as B zoning it would be $200 to $300 per front foot. He further testified that there was no demand for PRS use in the area; that one of the appellees had unsuccessfully listed its land for sale for over two and one-half years; that the business use of the particular property would not affect in any way the public health, morals or welfare of the surrounding area and that it would be in keeping with the surrounding area; that the size of the lots would restrict the business use to small independent neighborhood businesses which would not generate a greater traffic flow than professional use; that department stores, filling stations, supermarkets, 7-Eleven type stores, and other businesses which would normally generate larger traffic could not be put on the subject lots; that in many cases professional usage would generate more traffic than the specialty shops that would be suitable for the area; and that the only equitable, fair, logical, practical and marketable zoning for this particular property was B.
The City's only witness, City Planner Wooley, testified that the traffic congestion was great at this location and that PRS would relieve this situation, although he admitted that it could be relieved even within business zoning by staggering the driveways in and out of off-street parking lots; that PRS was better zoning for sanitary reasons; that aesthetics in some measure related to the general welfare, and that PRS would give more stability to the neighborhood than B zoning. He also admitted, however, that while the adjacent business property had developed, the subject property which had been zoned PRS since 1964 had remained undeveloped. Upon being questioned by the Court Mr. *517 Wooley weakened his position by testifying that even if the area were zoned B, filling stations, furniture stores, or other larger businesses which would generate additional traffic could not be erected on the small lots involved. Mr. Wooley maintained that PRS, which permits motels, doctors' offices, pharmacies, snack bars, and other related services, would generate less traffic and would create less sanitary problems than business zoning. At the conclusion of the hearing the Court found Mr. Wooley's testimony incredible and that of Mr. Beach much more credible as to traffic and sanitary problems. In considering the problem the Court found that the type of business which might reasonably go upon the land if rezoned B would not create more traffic or sanitation problems than those created by motels and certain other uses permitted under PRS zoning, or different problems from those created by the businesses on the adjacent property.
Appellant cites Neubauer v. Town of Surfside, Fla.App. 1966, 181 So.2d 707; City of Miami v. Zorovich, Fla.App. 1967, 195 So.2d 31, cert. den. Fla., 201 So.2d 554; Town of Bay Harbor Islands v. Burk, Fla. App. 1959, 114 So.2d 225; City of St. Petersburg v. Aikin, Fla. 1968, 217 So.2d 315, to support its proposition that appellees failed to show that the zoning ordinance was confiscatory and unconstitutional as applied to their property, or destroyed the only reasonable and beneficial use of their property. Those cases are distinguishable from the case sub judice in that they involved spot zoning, which has been condemned by a long line of cases, and the property owners failed to show that the zoning ordinances were not fair and impartial as applied to their property, or had invaded their personal or property rights unnecessarily or unreasonably in violation of the Federal or Florida Constitution.
As pointed out in the above-cited cases, a reduction in the value of the property caused by the zoning ordinance is not, of itself, enough to render the ordinance confiscatory. The property owners must show that the application of the zoning ordinance has the effect of completely depriving them of the beneficial use of their property by precluding all uses or the only use to which it is reasonably adapted, or that the ordinance has invaded their personal or property right unnecessarily or unreasonably in violation of the Federal or Florida Constitution. When the police power has been asserted fairly and impartially in the interest of the public health, safety, morals or general welfare, the Courts will not substitute their judgment for that of the public officials duly authorized in the premises unless it clearly appears that their action has no foundation in reason and necessity. Forde v. City of Miami Beach, 1941, 146 Fla. 676, 1 So.2d 642.
In the case sub judice the block in which the subject property is situated is surrounded by B zoning, except for the narrow parkway strip to the east, and is similar to the "veritable island" described in Tollius v. City of Miami, Fla. 1957, 96 So.2d 122, where our Supreme Court held that the propriety of the restrictions on the use of the property was not "fairly debatable." Mr. Justice Thomas, speaking for the Court in that case, said:
"There must be a substantial and reasonable relationship between the need for zoning restrictions and the public health, morals, safety or welfare to justify interference, by exercise of the police power, with an owner's right to the enjoyment of his property. Only in the presence of such necessity will he be required to make a personal sacrifice for the good of the people. City of Miami Beach v. Lachman, Fla., 71 So.2d 148."
In Burritt v. Harris, Fla. 1965, 172 So.2d 820, as modified by City of St. Petersburg v. Aikin, Fla. 1968, 217 So.2d 315, the Supreme Court said:
"If the zoning restriction exceeds the bounds of necessity for the public welfare, *518 as, in our opinion, do the restrictions controverted here, they must be stricken as an unconstitutional invasion of property rights."
See Shearer v. Metropolitan Dade County, Fla.App. 1966, 189 So.2d 501, cert. den. Fla., 196 So.2d 924; Kugel v. City of Miami Beach, Fla.App. 1968, 206 So.2d 282, cert. den. Fla., 212 So.2d 877; Metropolitan Dade County v. Pierce, Fla.App. 1970, 236 So.2d 202. Manilow v. City of Miami Beach, Fla.App. 1968, 213 So.2d 589, aff. Fla., 226 So.2d 805, involved a similar situation and the Court there said:
"To deny the relief sought herein * * would constitute spot zoning in reverse."
We hold that the property owners sustained the burden of showing that the zoning of the subject property is arbitrary and unreasonable, has no reasonably debatable relationship to the public health, safety or general welfare, and that their property should be rezoned for a use consistent with surrounding areas and circumstances. City of Miami Beach v. Weiss, Fla. 1969, 217 So.2d 836; Manilow v. City of Miami Beach, supra; Watson v. Mayflower Property, Inc., Fla.App. 1965, 177 So.2d 355, cert. den. Fla., 183 So.2d 215; City of Miami Beach v. First Trust Company, Fla. 1949, 45 So.2d 681. Cf. Metropolitan Dade County v. Kanter, Fla.App. 1967, 200 So.2d 624; Smith v. City of Miami Beach, Fla.App. 1968, 213 So.2d 281; City of St. Petersburg v. Aikin, supra; Watson v. Mayflower Property, Inc., Fla.App. 1969, 223 So.2d 368; City of Jacksonville v. Imler, Fla.App. 1970, 235 So.2d 526.
Affirmed.
LILES, A.C.J., concurs.
MANN, J., dissents with opinion.
MANN, Judge (dissenting).
The petitioners' own witness acknowledged on cross-examination that this property could be developed within its current zoning classification. Of course it is worth substantially less money than it would be for business purposes. The evidence that one petitioner had tried unsuccessfully to sell its property is of little weight: there is no indication at what price the property was listed.
Judges should not substitute their judgment for that of local officials unless there is no reasonable basis for the zoning classification. This one is clearly fairly debatable. I must respectfully dissent on authority of St. Petersburg v. Aikin, Fla. 1968, 217 So.2d 315, and cases there cited.